VIRGIN ISLANDS HOUSING AUTHORITY, Plaintiff

v.

EUDELTA JOSEPH, Defendant

Civil No. 131-1977

Territorial Court of the Virgin Islands

Div. of St. Thomas and St. John

July 29, 1977

ANITA C. WILSON, ESQ., Assistant Attorney General, Christiansted, St. Croix, V.I., *for plaintiff*

JESSE M. BETHEL, ESQ., Legal Services of the V.I., St. Thomas, V.I., *for defendant*

HODGE, *Judge*

### MEMORANDUM OPINION

Plaintiff, Virgin Islands Housing Authority, is an autonomous agency of the territorial government which sponsors and manages, as landlord, federally subsidized public housing projects. On February 25, 1977, plaintiff filed its complaint seeking recovery of unpaid rent and restitution of the rented premises from defendant, Eudelta Joseph, one of its tenants. Defendant's answer was filed on May 11, 1977, admitting owing an unspecified portion of the rent, but asserting an affirmative defense of partial abatement by alleging plaintiff's failure to repair the premises. On May 13, 1977, the matter was heard at length, and thereafter post trial briefs and a stipulation were submitted at the request of the court. After deliberation and review of the entire record, the Court has no difficulty in making the findings and conclusions which follow.

## I.

On October 1, 1971, the parties executed a written lease agreement in which plaintiff rented to defendant Apartment 21, Building 4 in the Michael J. Kirwan Terrace, one of plaintiff's federally subsidized public housing projects. The rented premises consist of three bedrooms, one kitchen, one living room, and one and a half bathrooms. At the time of the execution of the lease, defendant agreed to pay a monthly rental of $51.50, subject to certain adjustments enumerated in Section 4 of the lease. Based upon such adjustments, it is undisputed that defendant's rent was first increased to $84.50 per month and was again increased in April 1977 to $115.00 per month. It is also undisputed that during the entire period for which plaintiff's claim is made, defendant's rent was $84.50 per month except for the months of April and May 1977 when the rental was $115.00 per month.

Plaintiff's original complaint alleged that the total sum due for unpaid rent was $696.00; however, an amendment was permitted by the court which increased the total claim to $1,010.50, representing rental charges up to and including May 1977. Defendant has conceded that the rental computations made by plaintiff are accurate, but contends that the total claim of $1,010.50 should be abated by one-half (50%) because of plaintiff's breach of its duty to repair defects in the premises within a reasonable time.

Accordingly, since there is no dispute as to plaintiff's total calculation of overdue rental charges, I find that $1,010.50 is the gross amount of unpaid rent chargeable to defendant. Nevertheless, defendant's plea for abatement must now be addressed to determine whether any reduction should be made to plaintiff's total claim.

## II.

Anticipating defects and damages to the premises, the parties, in executing the lease, provided for notice, repairs, alterations and improvement to the dwelling unit with reasonable promptness. Specifically, paragraph 6 of the lease provides as follows:

DAMAGE AND REPAIRS. Tenant shall use reasonable care to keep his dwelling unit in such condition as to prevent health or sanitation problems from arising. *Tenant shall notify Management promptly of known need for repairs to his dwelling unit,* and of known unsafe condition in the common areas and grounds of the project which may lead to damage or injury. Except for normal wear and tear, Tenant agrees to pay reasonable charges for repair of intentional and negligent damage to the leased premises or project caused by tenant, his family, or dependents. Such charges shall be billed to Tenant and shall specify the items of damages involved, correctional action taken and the cost thereof. Management agrees to accept rental money without regard to any other charges owed by Tenant to Management, and to seek separate legal remedy for the collection of any other charges which may accrue to Management from Tenant.

Management shall maintain the buildings and common areas and grounds of the project in a decent, safe, and *sanitary condition in conformity with the requirements of local housing codes and applicable regulations or guidelines of the Department of Housing and Urban Development. Management shall make all necessary repairs, alterations, and improvements to the dwelling unit with reasonable promptness at its own cost and expense,* except as otherwise provided in this Section. If repairs of defects hazardous to life, health, and safety are not made or temporary alternative accommodations offered to the Tenant within seventy-two hours of Tenant's reporting same to Management, and if it was within Management's ability to correct the defect or obtain the correction thereof, then Tenant's rent shall abate during the entire period of the existence of such defect while he is residing in the unrepaired dwelling. Rent shall not abate if the Tenant rejects reasonable alternative temporary accommodation. (Emphasis added.)

On its face, this provision of the lease clearly imposes a duty on the defendant to promptly notify the plaintiff of

defects which exist in the dwelling unit. Similarly, it imposes a duty on the plaintiff to repair the reported defects with reasonable promptness.

The testimony indicates, and I so find, that defects needing repair existed in the rented premises, that these defects occurred in March or April 1976, that they existed in the kitchen, and that they consisted of an improperly installed and leaking sink which caused the counter top and cabinet to rot and buckle, soaked the entire cabinet and stove area with water, spoiled foods, created foul odors and infestation of roaches, caused electrical shock to defendant's minor child, and continued unabated for one year because the cabinet needed to support the sink was not repaired in a timely manner, thereby making the kitchen indecent, unsafe, and unsanitary.

In addition, I find from the evidence that notice of these defects was given by defendant to plaintiff through its assistant housing manager, as required by the lease. Plaintiff argues that no notice of these defects was received from defendant, but the Court accepts the testimony of plaintiff's assistant housing manager who corroborated defendant's testimony by stating that she was, in fact, told by defendant of the kitchen defects, although admitting that she did not turn the faucet on to see if the sink was leaking. The testimony is uncontradicted and the Court further finds that this notice was given to plaintiff in March or April 1976, during a regular inspection tour of the premises by the assistant housing manager. While plaintiff submitted sufficient documentary and testimonial evidence to establish to the Court's satisfaction that various other defects had been remedied and that prior unsuccessful attempts had been made to stabilize the sink, it is uncontradicted that plaintiff failed or refused to repair the kitchen cabinet which provided the basic support for the sink, variously claiming lack of notice or lack of funds for

cabinet replacement. It is this failure to repair the kitchen cabinet that led to the continual leaking of the sink and the concomittant unhealthy conditions which resulted therefrom. Moreover, this defect continued unabated from March or April 1976 until March 22, 1977, when plaintiff, in the face of a hearing scheduled for April 1, 1977, in this case, finally responded to defendant's incessant pleas to replace the cabinets, which had led to defendant's withholding of her rent since September 1976.[1] This long-delayed response coincidentally resulted in the immediate replacement of the kitchen cabinets, thereby effectively restoring the dwelling unit to a decent, safe and sanitary condition just prior to the hearing.

■ In view of the one-year delay in repairing the defective cabinets and their related adverse effects, I conclude that plaintiff breached its duty to repair, as imposed by paragraph 6 of the lease, which required that repairs be done "with reasonable promptness." In addition to breaching this provision, plaintiff has also violated its own repair policy,[2] as established by uncontradicted testimony. Since that repair policy provides that even routine repairs should take no longer than fifteen days to complete, it is clear that plaintiff's failure to correct the serious defects in defendant's apartment for one year after due notice constituted a breach of duty of defendant.

### III.

Having found that plaintiff breached its duty to make the

---

[1] Nothing in this memorandum should be construed to mean that a tenant has a right to withhold rent. However, the Court notes that had plaintiff implemented the grievance procedure as required by paragraph 10 of the lease, there may have been no need for defendant to withhold her rent.

[2] Testimony established that the following Repair Policy was in effect by Plaintiff at the time the defects existed:

| TYPE | COMPLETION TIME |
| --- | --- |
| Emergency | Immediately |
| Urgent | One to eight hours |
| Routine | Up to 15 days |
| Preventive | Less frequently |

required repairs in a timely manner, it must now be determined what remedy is available to defendant for that breach.

 It will be recalled that the lease provided that if the defects are hazardous to life, health and safety, and plaintiff failed to make timely repairs or provide other compensatory relief, defendant's rent would be abated during the entire period of the existence of the defect. Plaintiff has argued, and I agree, that under the circumstances of this case the defects enumerated herein are not hazardous to life, health and safety, and therefore total abatement of the unpaid rent cannot be justified. But the lease also provides for the repair by plaintiff of less serious defects which nevertheless result in indecent, unsafe, and unsanitary conditions. While not being "hazardous", such defects are also required to be repaired by plaintiff, and where as here, that duty is breached, reasonable partial abatement is the remedy, based upon an appropriate measure of damages.

What I find to be the most appropriate measure of damages is the determination of the difference between the fair rental value of the premises as warranted and its fair rental value in the indecent, unsafe, and unsanitary condition, as concluded herein. This measure of damages, computed on a monthly basis and multiplied by the number of months during which the defects existed, would result in a reasonable and fair sum to be credited against the gross claim of plaintiff, thereby resulting in an equitable partial abatement. Mease v. Fox, 200 N.W.2d 791, 796 (Iowa 1971); 2 R. Powell, The Law of Real Property, §§ 225(2)(a), 232.3.

In applying that measure of damages to this action, I find that defendant is entitled to a twenty-five percent (25%) abatement of monthly rent for the twelve months that the

defects continued unabated during her occupancy. Since during that twelve month period (March or April 1976–March 22, 1977) defendant's rent was $84.50 per month, she will be entitled to a partial abatement of $21.13 per month, or a total partial abatement of $253.56 for the twelve months. This 25% partial abatement was determined by considering the rental of the defective kitchen to represent 15% of the monthly rent (1 room of $6\frac{1}{2}$ rooms, or approximately 15%), and adding to that 10% of the monthly rent for the seriousness of the defects which also adversely affected the defendant's use and enjoyment of the other rooms of the dwelling unit. These percentages, while admittedly estimates, reflect the court's attempt to utilize all available facts in approximating the fair and reasonable rental value of the premises during the existence of the defects. The Court is therefore satisfied, and concludes, that the fair rental value of the premises as warranted was reduced by 25% while the defects existed.

This conclusion is consistent with various formulas applied by other jurisdictions in fashioning a remedy for breach of the duty to repair by landlords. See Pantalis v. Archer, 384 N.Y.S.2d 678 (1976) (failure of landlord to provide hot water resulted in an award of $50.00 by way of abatement of rent); Ridge Town House v. Dietz, 338 A.2d 21 (N.J. 1975) (abatement in rent of 15% monthly because of defect in leased premises); Morbett Realty Corp. v. Rosenshine, 323 N.Y.S.2d 363 (1971) (20% abatement of rent granted). See also, Javins v. First National Realty Corp., 428 F.2d 1071 (D.C. Cir. 1970), cert. denied, 400 U.S. 925; Cooks v. Fowler, 459 F.2d 1269 (D.C. Cir. 1969).

In accordance with the foregoing, plaintiff's gross rental claim of $1,010.50 will be reduced by the partial abatement of $253.56, thus leaving a net rental sum due plaintiff of $756.94.

## IV.

 The one issue remaining to be decided is whether plaintiff's prayer for restitution of the premises should be granted. In view of my conclusion that defendant is entitled to partial abatement of rent because of plaintiff's breach of duty to repair the premises, the claim for restitution must be denied.

In Javins v. First National Realty Corp., supra, the court addressed this issue and stated as follows:

> ... The jury may find that part of the tenant's rental obligation has been suspended but that part of the unpaid back rent is indeed owed to the landlord. In these circumstances, no judgment for possession should issue if the tenant agrees to pay the partial rent found to be due. If the tenant refuses to pay the partial amount, a judgment for possession may then be entered. 428 F.2d at 1083.

In this case, defendant testified that she was prepared to pay whatever rent was found to be due and that she was holding her rental payments in escrow. Indeed, defendant has consistently admitted owing at least some portion of rent to plaintiff. Under these circumstances, and in view of the Court's vindication of defendant's claim for abatement of rent, coupled with the Court's determination that plaintiff breached its duty to defendant, no judgment of restitution of the premises will issue, except upon the failure of defendant to pay the adjusted rent as determined herein.[3]

---

[3] Several options, without withholding rent, are available to tenants. Defendant may have elected to make the repairs herself and then set off the cost of repairs against her rental obligation. Defendant may also have abandoned the premises under the theory of constructive eviction despite the duration of the tenancy under the lease. However, defendant chose to withhold her rent at the risk of having a judgment for eviction issued against her. This risk still exists so long as the judgment in favor of plaintiff is not satisfied.