**HURCHELL GREENAWAY, d/b/a ISLAND INN, Plaintiff**

**v.**

**FAITH DANE JOHNSON, Defendant**

Civil No. 657/1977

Territorial Court of the Virgin Islands

Div. of St. Croix at Christiansted

May 17, 1978

JEAN–ROBERT ALFRED, ESQ., Christiansted, St. Croix, V.I., *for plaintiff*

FRANK PADILLA, ESQ., Frederiksted, St. Croix, V.I., *for defendant*

SILVERLIGHT, *Judge*

## MEMORANDUM OPINION AND JUDGMENT

This is an action for recovery of unpaid rents and for restitution of premises. The premises in issue is Unit #1 located in the Island Inn, a licensed "hotel, guesthouse and restaurant," rented to defendant on a month to month basis.

When the matter first came on for trial on July 15, 1977, this Court dismissed the action on defendant's motion pursuant to Rule 41(b) F.R.C.P., on the grounds that the subject rental was governed by the Rent Control Law of the Virgin Islands, 28 V.I.C. § 831, et seq., and that plaintiff had failed to comply with the procedural prerequisites

for maintaining an action for restitution as set forth in 28 V.I.C. § 840(b) and 28 V.I.R.&R. § 833–6(b), (c).[1]

On appeal, the District Court vacated the judgment of dismissal, ruling that there was insufficient evidence adduced at the conclusion of plaintiff's case to determine that the unit rented to defendant did not fall within the statutory exclusion from rent control granted to "hotels and transient lodging houses" by 28 V.I.C. § 845.[2]

On remand to this Court, a full and complete evidentiary hearing was held on the matter and decision was reserved. Thereafter, but before entry of judgment, defendant acting pro se moved this Court for leave to reopen the hearing for further testimony. The defendant apparently did not disclose the filing of this motion to her attorney of record who only discovered its pendency in an accidental fashion. Upon the date for oral argument of the motion for leave to reopen, defendant's counsel orally moved the court for leave to withdraw. This motion was granted for the reason that defendant's attempt to appear pro se, coupled with the comments made by defendant concerning her counsel of record, were deemed by the Court to be tantamount to a termination of his services by her.

The motion for leave to reopen was denied for the reason that the proffered testimony was irrelevant, was cumulative in nature, and was not newly discovered evidence, all of the same having been available to or within the knowledge of defendant prior to the conclusion of her case.

■ Immediately following the disposition of the two motions aforesaid, defendant filed a pleading which purports to be a motion for leave to appeal the order of this Court entered on April 6, 1978, requiring a deposit of accrued rental into the registry of the court. This motion was

---

[1] See Greenaway v. Johnson, 13 V.I. 481 (1977).

[2] See Greenaway v. Johnson, District Ct., St. Croix, Civil No. 77/182 (Judge Young, January 30, 1978).

summarily denied by the court sua sponte because the April 6 order was interlocutory in nature,[3] had not been certified for appeal, and could not properly be so certified. As an interlocutory order, it was unappealable.[4] No detriment will be suffered by defendant as a result of this denial, however, since by the entry of final judgment at this time, pursuant to this memorandum opinion and after consideration of the post trial memoranda submitted by counsel, the issues contained in the case will be rendered simultaneously ripe for appeal.

Two affirmative defenses are raised in these proceedings. The first is that defendant's unit in Island Inn was under the Rent Control Law and therefore plaintiff could not bring this suit due to his failure to follow the procedural requirements necessary to evict a tenant under the protection of those statutes.

Defendant's second defense is that she was partially evicted from her unit due to the plaintiff landlord's failure to repair and maintain her room in a livable condition. Under either theory, defendant maintains that no rent is due, despite her failure for over a year to pay any portion of the monthly sums accruing.

The pertinent facts in the case are concurred in generally by both parties. In August of 1976, plaintiff had acquired his license to operate his business, known as the Island Inn, as a "hotel, guesthouse and restaurant." He had recently acquired the property from its previous owner and operator, Bruce Davis, who had operated it as the "Pink Fancy Hotel."

[3] An interlocutory order is defined as, "An order which decides not the cause, but only settles some intervening matter relating to it; as when an order is made, on a motion in chancery, for the plaintiff to have an injunction to quiet his possession till the hearing of the cause." Black's Law Dictionary, 4th Ed., 1951.

[4] To be appealable, a decree must be definitive and final, such that the order or decree concludes the litigation between the parties and precludes them from further action in court. In Re Alexander's Estate, 200 A.2d 865 (Pa. 1964); Hudson v. Hudson, 178 A.2d 202 (N.J. 1962); Tidewater Oil Co. v. United States, 93 S.Ct. 408, 409 U.S. 151, 34 L.Ed.2d 375 (1972).

The evidence discloses that defendant had been discussing with Mr. Davis the possibility of creating and operating a "music school kind of thing" on the premises in exchange for a studio apartment in the "Pink Fancy." However, no agreement was reached and subsequently the property was sold to plaintiff, who was unaware of these discussions until defendant approached him with similar proposals. However, again no agreement was reached by the parties hereto.

From the testimony, the Court finds that the parties were on good terms prior to the beginning of defendant's occupancy in the Island Inn. Defendant testified that she had often eaten at a restaurant operated by plaintiff in another location prior to his purchase of the Island Inn, and by all accounts they were close acquaintances, if not good friends.

In late August or early September of 1976, defendant was evicted from her apartment in the Craggs, Estate LaVallee, St. Croix, and appeared at the Island Inn, desperately in need of a place to stay. Although the establishment was still going through a process of renovation by its new owner and not completely open for business, plaintiff consented to rent Unit #1 to defendant for the sum of $235.00 per month.

Defendant had examined all the units in the partially renovated and mostly vacant establishment, and chose Unit #1 for its location in a quiet remote corner of the premises. At that time, the adjoining unit was vacant and defendant anticipated stabling her horse therein. Plaintiff denies that he was privy to this unusual notion and, at any rate, as he continued to renovate the property, he installed a kitchen in that vacant unit, covered over the swimming pool, and created a restaurant on the upper terrace, all permitted under his business license for a hotel, guesthouse and restaurant.

According to his testimony, although plaintiff contemplated renting the units in the Island Inn on a daily or weekly basis, he agreed to rent Unit #1 to defendant on a monthly basis. The normal rental for a comparable double room would have been from $16 to $23 per day, or a maximum of $690 per month with full services. However, agreement was reached between the parties that the defendant would pay the reduced rate of $235 per month, but that plaintiff would supply no maid service, curtains, toilet tissue, linens, or other services except the provision of water and utilities.

Defendant moved into Island Inn on September 6, 1976, "in refuge due to a summary eviction from the Craggs (sic)."[5] A few days later, a second person moved into Unit #1 and has resided continuously with her in that unit, enjoying the facilities and hospitality of defendant's lodgings.

The agreed rental was paid more or less regularly until March 22, 1977, at which time there was an unpaid balance of $370. On March 22, 1977, a demand letter[6] was hand-delivered to defendant by plaintiff, followed on March 31 by a formal notice to quit,[7] receipt of which was acknowledged in writing by defendant. Unless the premises is controlled by the Rent Control Law, the plaintiff has complied with all statutory prerequisites for maintaining this action for the recovery of possession of the premises, 28 V.I.C. §§ 789, 790, and this Court has subject matter jurisdiction.

No payments have been made since before March 22, 1977, and there would be now due and outstanding the

[5] Defendant's Exhibit "K" consumer complaint form signed by defendant and filed with Consumer Services Administration June 15, 1977. In the July 15, 1977, hearing, plaintiff testified that defendant told him that she wanted "somewhere to go; she was out in the street." Transcript, p. 32.
[6] Plaintiff's Exhibit #1.
[7] Plaintiff's Exhibit #2.

202

sum of $3,425 representing unpaid rent for a period of over one year.

The first issue to be determined is whether defendant's unit in the Island Inn is under the procedural protection of the Virgin Islands Rent Control Law, 28 V.I.C. § 831, et seq. It is undisputed that the Island Inn is licensed to operate as a "hotel, guesthouse and restaurant." As so operated, it may be exempt from rent control under the statutory exclusion granted to hotels and transient lodging houses. 28 V.IC. § 845.[8] However, if the evidence reveals that, as to Unit #1, an occupancy was contemplated other than as transient lodging, the exclusion would not apply and the Rent Control Law would come into consideration. This Court initially was of the opinion that this facility, as to Unit #1, was not a "hotel or transient lodging house." However, the further testimony of both parties leads this Court to conclude that defendant's occupancy of Unit #1, although on a month to month basis at a special rate and stripped of all services which would normally be rendered to a transient guest, was entered into as a temporary, short-term arrangement and has only been permitted to continue due to the intransigence of defendant and the failure of plaintiff's efforts to evict her.

It is clear that the room was rented under extenuating circumstances. The plaintiff hotel owner was approached by defendant while still in the process of renovating the premises, and told the woeful tale of defendant's impending summary eviction and her need for at least temporary quarters. Contrary to his regular policy, he agreed to rent to defendant on a monthly basis. Plaintiff testified that although the unit was rented from month to month, he would compute any rent owed, if defendant vacated in the middle of a month, on a pro-rated per diem basis, a clear

---

[8] 28 V.I.C. § 845 provides: "This subchapter shall not apply to hotels or transient lodging houses."

indication that he did not contemplate defendant's long term occupancy.

On her part, defendant testified that she was desperate and had to move somewhere, stating that the Island Inn was but a refuge following her summary eviction from the Craggs. It is clear that she considered it but a transient lodging, testifying that she had to stay in the Island Inn because she had no other place to go.

There is a conflict in testimony as to whether plaintiff agreed to the $235 rate *only* until "the season" began, a period of a little over two months, after which time it was to be raised to $265 per month. Since the rent was not, in fact, raised, the dispute is irrelevant except to confirm further the temporary nature of the agreement.

■ The Court finds by a preponderance of the evidence that the unit rented to defendant was not on a permanent or long term basis, but was merely to accommodate her through the temporary displacement occasioned by her summary eviction and until she found a more suitable place. The Court finds as a fact that Unit #1 was rented to defendant as a transient guest, for a temporary period, and, therefore, holds as a matter of law that defendant's unit is the subject of the statutory exclusion granted to hotels and transient lodging houses, 28 V.I.C. § 845. As such, it is not governed by the procedural safeguards of the Rent Control Law of the Virgin Islands. Defendant's affirmative defense on that theory, therefore, fails.

Defendant's second defense is based upon the claim that she was partially evicted due to plaintiff's failure to repair and maintain her room in a habitable condition. The major dispute revolves around the condition of the unit at and subsequent to the time defendant began her occupancy

and whether plaintiff was aware of the alleged deficiencies which are the basis of her affirmative defense.[9]

The unit in issue contains a bed-living room and bathroom, as well as kitchen facilities consisting of stove and refrigerator. Plaintiff supplied an air conditioning unit as well as a ceiling fan, water and utilities, but included no maid service, curtains, toilet tissue, linens or other services in the rental agreement.

Plaintiff contends that defendant was satisfied with her room, having examined all of his units and having herself chosen Unit #1 over all of the others. He reasons that common sense would dictate that if the unit in issue were in the untenantable condition defendant asserts, it would be unlikely that she would first select it and then continue to live there for over 18 months. He acknowledges that she asked for replacement of a nonfunctioning stove, which he duly replaced. However, he testifies that defendant never indicated dissatisfaction with the apartment, never complained to him of any other alleged malfunctions in the plumbing or other fixtures, and that she, in fact, replaced the doorlock in July of 1977, thereafter excluding him from entry into or inspection of her unit.

Defendant's testimony is directly contradictory to that of plaintiff. She testifies that she complained about the flush mechanism on the toilet, the slow drainage in the tub, the irregular water supply, the quality of the water, the faulty stove, the fumes and noise from the kitchen, the noise of the bands on week-ends, the lack of security, and the uncomfortable mattresses.[10] In support of her

---

[9] This Court has disregarded the evidence relative to purported beach rights at the Jockey Club on the Cay since defendant's own testimony disclosed that she was unaware of these rights until long subsequent to the commencement of her occupancy and, therefore, could not have relied on them in entering into such occupancy.

[10] This list of alleged deficiencies is not intended to be all inclusive, but deals only with those which the Court deems require consideration.

allegation that she complained constantly to plaintiff, defendant put into evidence a written complaint to the Consumer Services Administration dated June 15, 1977, in which many of the above defects were listed.[11] The Court finds that it is more probable than not that defendant did complain of these matters and rejects plaintiff's testimony in contradiction thereof. However, further testimony convinces the Court that these are but minor, exaggerated claims in the totality of the circumstances, and certainly not of a nature to effect any *substantial* or *material* deprivation of the beneficial use and enjoyment of the premises.

Examining each of defendant's allegations separately, it becomes evident that the defects complained of are bothersome and perhaps inconvenient, but certainly not of such a magnitude to justify withholding the rent for over a year. Defendant admits that the tub does drain, the difficulty being that the stopper must be held open by hand. Similarly, the toilet does flush adequately, defendant's complaint being that the flush knob had to be operated by a "Rube Goldberg" device created by her companion shortly after he moved in.[12]

Defendant's allegation about the quality and intermittent pressure of the water, while certainly annoying, is a complaint common to most Cruzans. More serious is her allegation that she was deprived of all but 8% use of her kitchen facilities due to plaintiff's failure to supply her with a stove. Both parties testified that the *refrigerator-*

---

[11] Footnote 5, supra.

[12] Defendant testified that she was deprived of all but 10% usage of her bathroom and that she frequently had to bathe at the homes of friends. It is noteworthy that during the entire period of her occupancy, her companion never had to resort to these measures and apparently never experienced the degree of inconvenience allegedly suffered by defendant. Other than hearsay testimony by her friends that defendant told them she couldn't bathe properly at the Island Inn, there is no evidence that the tub and shower did not in fact function adequately, although perhaps not perfectly.

stove unit functioned properly when defendant moved in but that the stove section ceased working soon after that. Plaintiff contends that it ceased functioning about three months after moving in, while defendant contends it was only a couple of days, but both concede that a new burner was installed and both agree that it is not now functioning.[13]

Defendant also contends that the air conditioner does not function properly. This was corroborated by a Mr. Octave David, rent control officer for the Virgin Islands Government, who testified that he inspected defendant's apartment twice: on May 2, 1977, and on the day of the trial, March 28, 1978. There was no mention of the malfunctioning of the air conditioner on his first visit, but on the second he testified that defendant told him it was not working. There is nothing in the record to ascertain whether he inspected the unit and tried it himself, or just accepted defendant's statement that it was not working properly. The Court has no way of knowing if the unit simply failed to cool to defendant's taste or whether, in fact, it was out of order. Plaintiff alleges that defendant never mentioned any problem with the air conditioner to him.

Other complaints revolve around the security of the windows, which defendant sought to correct by nailing planks across the apertures. The windows consist of louvered shutters, in the West Indian tradition, and are no different from those found on any structure the age of the Island Inn.[14] There are no iron "burglar bars" on the windows, but the defendant was certainly aware of that when

---

[13] Defendant testified that plaintiff told her that if she would pay the rent, he would plug the stove in. Plaintiff testified that he hooked the stove up. The Court concludes that much of the acrimony and dispute arising out of this case proceeds from the obstinacy of one or the other parties in refusing to bend down and plug the stove into the electrical outlet.

[14] See defendant's Exhibits E, H, and J, admitted into evidence, as well as her Exhibits F and I, all of which are revealing photographs.

she moved into her unit. Plaintiff owes defendant no duty to ensure that the unit is absolutely burglar proof, and no such duty is alleged. Correspondingly, defendant cannot release herself from the obligation to pay rent merely because of her fear that her rooms might be less than impregnable.

Finally, defendant vociferously complains about the noise and smells associated with plaintiff's operation of a restaurant and night spot in another portion of the Island Inn. The restaurant kitchen is some thirty feet from her unit, yet defendant, a vegetarian, alleges that the fumes and odors of "cooking flesh" nauseate her, while the clanking of the kitchen utensils and the noise of bands on weekend nights in the restaurant make it impossible to sleep in the room.

Defendant's witnesses corroborated the loud level of noise from the bands, and the Court concurs that for the two evenings a week on which the bands played, sleeping would be difficult if not impossible at such close proximity to the stage. There is evidence, however, that rather than spending her evenings tossing sleeplessly, defendant instead was a participant in the music, dining until late and dancing with the other guests of the hotel.

Out of one of these late evenings, another of defendant's complaints arises, to wit: that plaintiff refused her restaurant service, thereby excluding her from or partially depriving her of one of the services to which she was entitled. Although it is not necessary to our conclusion, the Court finds that restaurant service was not one of the services for which defendant bargained in obtaining her discount rate of $235 per month. By defendant's own admission, she had no idea that a restaurant would be installed in the Island Inn. Considering that defendant complains so passionately about the establishment of the restaurant and its resultant foul odors, her credibility and

208

good faith are called into question when she now protests that she was injured by plaintiff's refusal to serve her in that same restaurant.

The testimony reveals that defendant was refused service at 1:30 a.m., plaintiff refusing to prepare her special vegetarian request because the kitchen was closed, although others were allegedly dining at that hour. The Court agrees with the position taken by plaintiff that the kitchen had, in fact, closed, although others were completing the meals they had ordered earlier. Every restaurant must call it a day at some arbitrary point, and past that time must refuse to serve diners if it is ever to clean up and put the kitchen in order for the next day. It does not outrage the conscience of this Court that at 1:30 in the morning, defendant was refused a meal which, with preparation and consumption, might have extended beyond 2:30 before the patroness finished her coffee and last cigarette and walked the tired path back to her room.

Turning to an examination of the applicable legal principles, under the above set of facts, defendant's defense of partial constructive eviction fails, as does any claim for abatement of rent for the inconvenience suffered, unless there is statutory provision to the contrary.

In the case sub judice, there is no contention that an actual eviction occurred, since such actual eviction requires a physical expulsion or exclusion whereby the landlord wrongfully ousts the tenant from the premises or portion of the premises. Barash v. Pennsylvania Terminal Real Estate Corp., 256 N.E.2d 707 (N.Y. App. 1970) ; 52 C.J.S., Eviction, § 445, p. 288. No entry by the landlord or physical ouster is alleged, nor was any evidence offered to prove such an act.

On the other hand, a constructive eviction can exist where, although there has been no physical expulsion or exclusion of the tenant, the landlord's wrongful acts

209

*substantially* and *materially* deprive the tenant of the beneficial use and enjoyment of the premises, causing the tenant to abandon possession of the demised premises. Barash v. Pennsylvania Terminal Real Estate Corp., supra; Kupoff v. Stepovich, 184 F.2d 705 (9th Cir. 1950), cert. denied, 71 S.Ct. 506, 340 U.S. 943 (1951); Hankins v. Smith, 138 So. 494 (Fla. 1931); 52 C.J.S., Eviction, § 445, p. 288.

An eviction may be of the whole or a portion of the demised premises. To be entitled to a suspension or abatement of the rent, the tenant must prove that the partial eviction from some portion of the premises is in character and degree sufficient to prevent the beneficial enjoyment by the tenant of the *entire* property. Where the proofs are insufficient to establish the elements necessary for the court to conclude that there has in fact been a partial eviction, the defense will fail. Duncan Development Company v. Duncan Hardware, 112 A.2d 274 (N.J. Super. Ct. 1955); Chelsea Hotel Corporation v. Gelles, 28 A.2d 172 (N.J. Ct. of Err. & App. 1942); M. M. Rowe Co. v. Wallerstein, 133 S.E. 669 (Va. S.Ct. of App. 1926).

We conclude that defendant has not established that there was in fact a partial eviction, and that the items complained of are not in character or degree sufficient to prevent the beneficial use and enjoyment of the demised premises *materially* and *substantially*. In the case sub judice, defendant has not actually abandoned any portion of Unit #1. For over 18 months both she and her companion have continued to use the bath and toilet facilities, as well as making full use of the bed-living room. Only in regard to the kitchen facilities has any real lack of use and enjoyment been shown. In that instance, however, defendant has not proven by the preponderance of the evidence that the stove's breakdown and subsequent replacement in a still inoperative condition (which may or may not depend upon whether it was plugged in), was due to the wrongful

act or omission of the landlord. Her long and uninterrupted occupancy of the entire apartment only serves as additional evidence that she has suffered no *material* deprivation of the beneficial use and enjoyment of even a portion of the leased premises, and her defense of partial eviction thereby fails.

 Even were that not so, her failure to vacate the premises from which she alleges that she was partially evicted acts as a waiver to claim that defense now while she remains in possession of the whole. There is no constructive eviction unless the tenant abandons or vacates the premises as a result of the wrongful acts or omissions of the landlord. Baker v. Simonds, 386 P.2d 86 (Nev. 1963); Loining v. Kilgore, 45 N.W.2d 544 (Minn. 1951); Giddings v. Williams, 168 N.E. 514 (Ill. 1929); Veysey v. Moriyama, 195 P. 662 (Cal. 1921); Weiss v. Zapinsky, Inc., 167 A.2d 802 (N.J. Super. Ct. 1961); Stillman v. Youmans, 266 S.W.2d 913 (Tex. Civ. App. 1954). If the tenant continues to occupy the premises from which he alleges he is constructively evicted, he waives his right to claim constructive eviction. Gillette v. Anderson, 282 N.E. 2d 149 (Ill. App. 1972); Cox v. Hardy, 371 S.W.2d 945 (Ky. App. 1963); Weiss v. Zapinsky, Inc., supra.

 We hold that defendant has failed to prove her defense of constructive eviction, both because the defects complained of were not of a character and degree to deprive her *substantially* and *materially* of the beneficial use and enjoyment of the premises and because, by failing to abandon or vacate the premises from which she claims to have been evicted, she thereby waived her right to claim the defense of constructive eviction. That being so, the payment of the rent was not suspended and defendant is, therefore, liable for all past-due rents and expenses incurred by the landlord in collecting them.

211

In most common law jurisdictions, the general rule is that a partial eviction, properly proven, operates as a suspension of the entire rent until the premises are restored to the tenant, although he remains in possession of the remainder of the premises demised. System Terminal Corporation v. Cornelison, 364 P.2d 91 (Wyo. 1961); Cornerstone Building & Loan Ass'n v. Tallman, 185 A. 361 (N.J. 1936); Goldberg v. Cosmopolitan National Bank of Chicago, 178 N.E.2d 647 (Ill. App. 1961); Nelson v. Lamb, 252 S.W.2d 713 (Tex. Civ. App. 1952); 52 C.J.S., Eviction, § 480(3), p. 394.

However, the Virgin Islands has enacted legislation which modifies that sometimes inequitable remedy. The statutory rule which we follow in the Virgin Islands provides for the apportioning of rents when the premises in a tenant's possession is only a part of what was originally bargained for and demised.[15] In such a case, a tenant who proves that he has been evicted from the use of a portion of the demised premises would be entitled to an abatement of the agreed rental, after sufficient proof is adduced at trial to enable the court to decide what proportion of the value of the rental was lost due to the landlord's wrongful acts or omissions. Virgin Islands Housing Authority v. Joseph, 13 V.I. 508 (Terr. Ct. 1977).

In the case at bar, although the court might agree that defendant did not receive the full beneficial use and enjoyment of the leased premises, nevertheless it is unable to determine the proportionate amount by which the value of the leased premises was decreased. The court is not permitted to speculate baldly as to damages, and to

---

[15] 28 V.I.C. § 751: *Rent; liability of person in possession; actions*

 (a) Every person in possession of land out of which any rent is due, whether it was originally demised in fee, or for any other estate or freehold, or for any term of years, *shall be liable for the amount of proportion of rent due from the land in his possession, although it is only a part of which was originally demised.* (Emphasis added.)

212

award an arbitrary figure in the case at bar would be beyond the power of this Court, lacking any evidence concerning the proportionate loss of use and beneficial enjoyment which was suffered. Defendant's unsupported statements that she had use of but 10% of the bathroom and 8% of the kitchen does not provide the court any assistance. Even accepting those figures as correct, there is no evidence of what fraction those areas represent to the aggregate value of the total living quarters.

██ The burden is upon the defendant to plead and prove by a preponderance of the evidence the elements of the defense asserted. Having been presented inadequate proof of the decreased proportionate value of the leased premises, the court is left with no other alternative but to refuse to apportion this monthly rental.

Plaintiff will be awarded the amount due to him for the rental of Unit #1 by defendant, for the period from March 23, 1977 to the present, at a rate of $235 per month for 13 months, and 12 days, equal to $3,149 plus $370.00 in rents accrued prior thereto, for a total of $3,519, plus costs and attorney's fees. Restitution of the premises shall also be granted to the plaintiff forthwith. Let judgment in accordance with this Memorandum Opinion enter.

## JUDGMENT

For the reasons set forth in the Memorandum Opinion of even date, it is

ORDERED, ADJUDGED AND DECREED that Plaintiff have Judgment against the Defendant for rental from March 23, 1977 to the present, at a rate of $235.00 per month for 13 months and twelve days, equal to $3,149.00 plus $370.00 in rents accrued prior thereto, for a total of $3,519.00; and it is further

ORDERED, ADJUDGED AND DECREED that restitution of the premises is granted to Plaintiff forthwith; and it is further

ORDERED, ADJUDGED AND DECREED that Plaintiff be awarded costs and attorney's fees to be determined upon the submission of the affidavits meeting the Estien v. Christian guidelines.