65 N.J. Super. 351 (1961)
167 A.2d 802
MOSES WEISS, PLAINTIFF-RESPONDENT,
v.
I. ZAPINSKY, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1961.
Decided February 14, 1961.
*354 Before Judges GOLDMANN, FOLEY and HALPERN.
Mr. Jack Ballan argued the cause for appellant.
Mr. Thomas J. Brady argued the cause for respondent (Messrs. Milton, McNulty & Augelli, attorneys; Mr. Joseph Keane, of counsel; Mr. Brady, on the brief).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Defendant tenant appeals from a Law Division judgment in plaintiff-landlord's favor on its counterclaim for loss of profits, expenses and damages resulting from an alleged constructive eviction, and granting plaintiff judgment of $4,050 for loss of rentals under the lease. That judgment also awarded defendant $14,106.75 on its counterclaim for damage to goods, wares and merchandise resulting from plaintiff's breach of covenant to repair.
Defendant contends that (1) the trial court's finding that there was no constructive eviction when defendant removed from the premises on March 31, 1958 is against the weight of the evidence; (2) it was error not to permit defendant to introduce evidence of loss of profits allegedly caused by the constructive eviction; (3) plaintiff was not diligent in obtaining a new tenant for the premises; and (4) his attempt to relet the premises "as is" involved such a change in the terms of his lease with defendant as to free it from liability to him for loss of rentals.

I.
Plaintiff owned certain factory premises in West New York which he rented to defendant under a written lease *355 dated June 11, 1957, for a three-year period beginning July 1, 1957. The term rent was $16,200, payable in monthly instalments of $450 on the first of each month, and defendant deposited rent security of $1,350, to be used in payment of the last three months' rent. The lease required plaintiff to make all exterior and structural repairs.
It would appear that shortly before entering into the lease defendant insisted that plaintiff make repairs to the floor and to the roof. Plaintiff hired one Sperduto to do this, paying him $2,550 for the work. The lease was then executed. Apparently Sperduto did not do the work properly; a water problem developed when there was repeated leakage from the roof and skylights. Shortly after July 1, 1957, and continuing through the summer and fall, defendant complained to plaintiff or his agents about these leaks, which were resulting in damage to its goods and interference with its work. Defendant suffered water damage on September 4 and 17, and on November 18, 1957. The trial court found that plaintiff was liable for this damage, totalling $14,106.75. He has not appealed from this part of the judgment.
On October 16, 1957 plaintiff, in an attempt to correct the situation of which defendant complained, entered into a written contract with Sears, Roebuck & Co. to install a new roof. This work was begun about November 12, 1957 and completed about November 20, two days after the last damage suffered by defendant. The trial judge found that there was no evidence of any damage to defendant's materials or chattels after November 18, 1957. In fact, defendant made no claim for any damage loss after that date.
Defendant vacated the premises on notice on March 31, 1958. Plaintiff made various attempts to obtain a new tenant for the property, at first on the same terms as his lease with defendant, but finally on an "as is" basis (i.e., the new tenant agreed to enter into possession of the premises in its then condition, and to be responsible for all interior and exterior repairs), at a reduced rental of $330 a month for the first year, the rent to be increased by $30 a month *356 in each successive year. The new tenant went into possession April 1, 1959.
Plaintiff sued to recover rents which fell due after March 31, 1958. Defendant denied it had breached the lease and counterclaimed to recover (1) damages suffered by reason of a constructive eviction and (2) the water damage to its goods, wares and merchandise.
The case was tried without a jury under a pretrial order which framed the issues as between plaintiff and defendant (there were third-party complaints with which we are not concerned) as: "Breach of lease, constructive eviction, negligence, contributory negligence, assumption of risk and damages." The trial judge, as noted, found in defendant's favor as to the water damage suffered on the three dates mentioned, in the sum of $14,106.75. He found against defendant on the issue of constructive eviction, pointing out that there was no claim or any evidence of water damage to defendant's goods and chattels after November 18, 1957, and that it had continued in possession until April 1, 1958. He also noted that after the new tenant went into possession on April 1, 1959 he had made no complaints of any water seepage or leaks, and nothing had been done to the roof or skylights from the time defendant vacated the premises until the new tenancy commenced. He concluded that the proofs did not establish any action or conduct on the landlord's part such as deprived defendant, or had the effect of depriving it, of the use of the demised premises. Further, the trial judge found that the premises had stayed vacant until April 1, 1959, when the new tenant went into possession at the reduced rental. He allowed the landlord $5,400, at the rate of $450 a month for 12 months, for the time the premises had remained vacant, but held that defendant was not liable for the rent differential between its lease and the new lease after April 1, 1959. Allowing defendant a $1,350 credit (representing the three months' rent deposited with the landlord) against the $5,400 due plaintiff, he entered judgment in plaintiff's favor for $4,050 on the rental claim.

*357 II.
Under R.R. 1:5-4(b), on a review of any civil action involving issues of fact not determined by the verdict of a jury, we are authorized to make new or amended findings of fact, first giving due regard to the trial court's opportunity to judge of the credibility of the witnesses. We are not disposed to overturn the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence as to offend the interests of justice. N.J. Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 317 (App. Div. 1956). We find substantial evidence in support of the trial judge's findings and conclusions that there was no constructive eviction and defendant breached the lease.
Duncan Development Co. v. Duncan Hardware, Inc., 34 N.J. Super. 293, 294 (App. Div. 1955), is completely dispositive of defendant's claim of constructive eviction. Unless a tenant abandons or vacates the premises as the result of a wrongful act of the landlord, there is no constructive eviction. A tenant who continues to occupy the premises for an unreasonable length of time after an act which constitutes constructive eviction, waives the eviction and may not thereafter abandon the premises and assert eviction. As we said in Duncan, to justify a tenant's abandonment or vacating of the premises, and for the tenant to be relieved from the performance of the terms of his lease, the act of eviction must be of a permanent character, performed by the landlord in order to deprive, and which in effect does deprive, the tenant of the beneficial enjoyment of the demised premises or a part of it. See Annotation, "Rights and remedies of tenant upon landlord's breach of covenant to repair," 28 A.L.R.2d 446, at page 468, § 16 (1953).
Although defendant might have successfully maintained its defense of constructive eviction had it abandoned *358 the premises at the time its goods were damaged by water, it waived the defense by continuing in possession after November 18, 1957, the date of the last damage suffered. We observe, again, that plaintiff had tried to correct the condition by having Sears, Roebuck & Co. install a new roof, which carried a five-year guarantee; that defendant made no claim for damage after this work was completed on November 20, 1957; and that the new tenant, who went into possession April 1, 1959, said he had not suffered any water damage, nor had the roof leaked during his occupancy.
We conclude that the proofs were not such as to justify an inference of wrongdoing on plaintiff's part  a sine qua non to constructive eviction  after the Sears roof was installed. Defendant did not vacate the premises as a result of any such negligence or wrongful act, but continued in possession for an unreasonable length of time after the date when he might have vacated the premises on a claim of constructive eviction. Duncan Development Co. v. Duncan Hardware, Inc., above, at page 297. We are therefore in accord with the trial judge's finding that there was no constructive eviction compelling defendant to vacate the premises when it did, and that it had breached the lease.
Defendant is apparently aware of the hiatus in its case due to the fact that it had made no claim of water damage after November 18, 1957, but had continued to occupy the premises until March 31, following. Hence, it requests us to remand this case for further testimony regarding specific occurrences of water damage subsequent to November 20, 1957. This may be viewed as a tacit concession that it had failed to prove a constructive eviction after that date. Defendant's principal testified to the fear of possible leakage in April 1958. Mere apprehension is insufficient to justify an abandonment of the premises. We see no reason why we should remand because defendant failed to prove its case on the first time around.
Defendant made a motion for a new trial, but this was denied by the trial court. It does not appeal the denial, *359 no doubt realizing its motion did not meet the requisites of a new trial on the grounds of newly discovered evidence.
Since we conclude that defendant's abandonment of the premises was unjustified in view of its failure to establish a constructive eviction, we need not concern ourselves with the contention that it was wrongly denied the right to present evidence of loss of profits proximately resulting from the alleged eviction.

III.
Defendant next contends that plaintiff made no genuine efforts to relet the vacated premises until the fall of 1958, although notice of removal was given as early as February 14, 1958, and it had actually vacated on March 31, 1958. The trial judge found to the contrary, and we agree. Plaintiff tried, through three or four real estate agents and by a number of advertisements, to find a tenant, and was not successful until the next spring.
The lease here in question contained a covenant that defendant was not to assign the lease or sublet the premises or any part thereof, but plaintiff was not unreasonably to withhold his consent to such an assignment or sublease. That provision is not involved here; there was no assignment or sublease, nor any attempt by defendant to effect one. The lease also contained a provision giving plaintiff, as landlord, or his representatives, the right at his option to reenter and relet the premises in case of vacancy or abandonment. It is settled law in this State that a landlord is under no duty to exercise such an option. See Heyman v. Linwood Park, Inc., Section Four, 41 N.J. Super. 437, 441 (App. Div. 1956). And see, generally, Annotation, "Duty of landlord on abandonment of premises by tenant before expiration of term to use due diligence to procure another tenant," 126 A.L.R. 1219 (1940).
Inferentially, the trial judge, by awarding plaintiff a sum representing 12 months' rent under the lease, found that *360 there had been no acceptance of defendant's surrender of the premises, or an entry and assertion of possession on plaintiff's part until April 1, 1959. We reach the same conclusion on the basis of the record before us. The trial judge was correct in awarding plaintiff one year's rent less the $1,350 deposited by defendant.

IV.
Defendant also argues on this appeal that there was a surrender of the premises by operation of law because plaintiff did not attempt to relet the premises on the same terms and conditions as set out in its lease, but sought to relet the property "as is," without a covenant to make outside or structural repairs. Surrender by operation of law was not an issue in the court below. We do not find it mentioned in the pleadings or in the pretrial order. It was not argued at the trial nor, from our examination of the motion for a new trial and from what we elicited at oral argument, was it an issue at that ultimate stage of the proceedings. It is raised for the first time here, and we will therefore not consider it. As to surrender by operation of law, see our opinion in the Duncan case, above, 34 N.J. Super., at pages 299-300.
Judgment is affirmed.