ROBERT E. THORNE *v.* JANET BROCCOLI

SUPERIOR COURT  JUDICIAL DISTRICT OF  FILE NO. 74456
       NEW LONDON

Memorandum filed February 23, 1984

*Waller, Smith & Palmer,* for the plaintiff.
*Scott, Kanabis & Dubicki,* for the defendant.

HURLEY, J. The plaintiff leased an apartment to the defendant under a one year written lease executed on May 21, 1982. The apartment was designated No. 7 on the first and second floors of a seven unit condominium known as the Borough School in Stonington. The unit was considered and described as a luxury apartment. The defendant moved out of the apartment on December 2, 1982, and the plaintiff brought this action to recover the rent due for the months of December, 1982, through May, 1983, during which month a new tenant was obtained.

The monthly rental was $900 subject to increase if the condominium service fee was increased. There were two such increases during the term of the lease, a $23.61 increase in December, 1982, and a further increase of $65.77 in April, 1983. The plaintiff claims rental due of $5673.20. He also claims $246.43 for providing electric heat and $100 in damages to cover damage to a wall which apparently occurred when the defendant moved out of the apartment. In addition, the plaintiff claims attorney's fees of $767.94, 15 percent of the amount of any judgment against the tenant as provided in paragraph 13 of the lease.

The defendant claims in her special defense that she was forced to leave the apartment because of constantly running toilets, an imbalance in the heating system between the two floors, failure of the plaintiff to install any shutters or traverse rods and failure of the plaintiff to provide workable shades.

The defendant presented credible testimony regarding the claims made in the special defense. She gave specific details regarding a total lack of privacy on the first floor where the master bedroom and bath were

located facing a terrace upon which many people sat or walked. She also described her frustration in attempts to fix the constantly running toilets. In attempts to fix a clogged drain in the toilet in the master bedroom, the plaintiff's agents left the toilet bowl in the middle of the master bathroom from November 8 to November 25, 1982. She could not regulate the heat and repeated complaints to the managing agent failed to resolve the problem. She could not budge the storm windows when she attempted to close them. She complained particularly about the plaintiff's failure to provide any covering for the windows except shades that she could not control. On the lower level the windows were seven feet high and three feet wide, running from floor to ceiling, allowing people on the terrace, ten feet away, a clear view of the bedrooms and bathroom. She found that for a rental of $900 per month the conditions were intolerable and that she was forced to leave the apartment.

The plaintiff and his witnesses did not refute the defendant's testimony. At best they tried to minimize her problems and recited their efforts to correct them. They acknowledged, however, that their attempts were unsuccessful.

In an effort to prove that the defendant left the apartment for reasons other than the conditions complained of, the plaintiff elicited testimony from Luetta Staley, rental agent for the building, that the defendant moved out to live with her estranged husband. The defendant firmly denied this charge and stated that she told Staley where she was moving to, not the reason she was leaving. She also explained that, had the apartment been satisfactory, her husband would have moved in with her.

The court finds that the defendant was justified in leaving the apartment.

Under § 47a-11a of the General Statutes, if a tenant abandons the dwelling unit, the landlord shall make reasonable efforts to rent it at a fair rental in mitigation of damages. Prior to the defendant's rental, the plaintiff had placed ads in the newspapers as a result of which the defendant became aware of the apartment and took the lease. After she left, the plaintiff did not place any ads in the newspapers, nor did he put up a sign. In fact, he acknowledged that he spent no money at all to advertise that the apartment was for rent. He contacted two or three real estate firms, but gave no one an exclusive contract. Staley said she showed the apartment to three prospective tenants in the six month period from December 2, 1982, to May, 1983. She quoted the monthly rental fee at $1000 although at the time the rent was only $923.61. She made no attempt to solicit lower offers nor, upon the plaintiff's instructions, did she offer it for anything less than $1000. Only in May, 1983, the month in which the defendant's lease expired, was the apartment rented to a new tenant.

Subsection (b) of § 47a-11a of the General Statutes states that if the landlord fails to use reasonable efforts to rent the dwelling unit at a fair rental, the rental agreement is deemed to be terminated by the landlord as of the date the landlord has notice of the abandonment. In this case that date is conceded to be December 2, 1982.

The court finds that the plaintiff did not make a reasonable effort to rent the apartment. Not only did he fail to spend any money advertising the rental, but neither did any one of the real estate agents place one ad in the newspapers. Furthermore, a fair rental under the circumstances would have been the same rent the defendant was paying or less. Here the plaintiff offered the apartment for over $75 more than the defendant was scheduled to pay during the period from Decem-

ber, 1982, to March, 1983, a period which he conceded was a difficult time of year to find a new tenant under any circumstances in Stonington.

Neither party cited any Connecticut cases interpreting the meaning of "reasonable efforts." The defendant cited, however, an Iowa case, *Vawter* v. *McKissick,* 159 N.W.2d 538 (Iowa 1968), in which the court held that the landlord failed to use reasonable diligence in an attempt to relet the apartment on facts similar to those of the present case. In that case the court noted the landlord's failure to do more than place a sign in the window; she failed to place any ads in the paper, did not offer the apartment at a reduced rent and claimed she was unable to rent the premises until seven days after the former tenant's lease expired.

The plaintiff also cites an Iowa case, *Friedman* v. *Colonial Oil Co.,* 236 Iowa 140, 18 N.W.2d 196 (1945), for the proposition that no specific method need be shown to relet the property. The court does not disagree; the second Iowa case cited by the defendant, however, has provided the court with some helpful guidelines in evaluating whether the efforts of the plaintiff were reasonable under all the circumstances. The court has concluded that they were not. Other cases cited by the plaintiff have different factual patterns from the case at bar. For example, in *Weiss* v. *I. Zapinsky, Inc.,* 65 N.J. Super. 351, 167 A.2d 802 (1961), the landlord did place a "number of advertisements." In the present case he placed none. The court therefore finds that under all the circumstances the plaintiff did not use reasonable efforts to relet the property as required by statute.

The court therefore finds that the defendant was justified in abandoning the premises and that the plaintiff failed to use reasonable efforts to relet the apartment. A decision under either claim would be sufficient to require a judgment in favor of the defendant.

The defendant also filed a counterclaim for twice the value of the security deposit plus interest. The court finds that under § 47a-21 of the General Statutes, the defendant is entitled to recover her security deposit, plus interest as required by statute, less $100 for damage done at the time she moved out of the apartment. Because of the unusual circumstances in the case the court does not require payment of twice the value of the security deposit.

Defense counsel also made an oral motion to recover counsel fees. That motion is denied since no specific claim for the same was made in the counterclaim.

Judgment may enter for the defendant on the complaint; on the counterclaim judgment may enter for the defendant to recover the security deposit of $900 plus interest, less $100.