[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION CT Page 8144
The plaintiff, Wilbur Cross Commons, brought this case claiming the defendant as lessee owes unpaid rent, taxes, and utilities on a 5 year lease extension, commencing July 1, 1985, through June 30, 1990, on the premises known as Building No. 15, 60 Connolly Parkway, Hamden, Connecticut. The defendant answered and filed special defenses, claiming (1) that the landlord released the tenant from the obligations by accepting another tenant; (2) the landlord had an obligation to mitigate damages; (3) the tenants did not enter into a lease with this landlord; and (4) the extension of the lease agreement on or about July 1, 1985 is void and unenforceable under the Statute of Frauds. The defendant also filed a counterclaim in two counts with appropriate relief. The first court alleges that the landlord's failure to repair the sump pump on the premises caused damages to the defendant and the second count alleges that those actions alleged in the first count of the counterclaim constitute an unfair trade practice under Connecticut's Unfair Trade Practices Act (CUTPA)
The plaintiff denies in substantial part the allegations of the special defenses and the counterclaims. The defendant subsequently withdrew special defenses (3) and (4) above.
The parties stipulated to the following facts, provided through certain documents in evidence:
(1) The plaintiff is currently the owner and lessor of the premises in question and Mr. Arnold J. Alderman was the previous owner. Mr. Alexander Nicholson purchased the entire office complex from Mr. Alderman, named it and his business Wilbur Cross Commons.
(2) The original written lease between the previous owner and the defendant ran from July 1, 1980 through June 30, 1985 and was extended in writing five years through June 30, 1990.
(3) Rent for the period in question, commencing January 1, 1989, was $942.51 per month.
(4) The defendant vacated the premises on April 30, 1989.
(5) The lease extension expired June 30, 1990.
(6) No rent was paid by the defendant from May 1, 1989 through June 30, 1990. Total rent alleged owing is $13,195.14 (14 months CT Page 8145 x $942.51).
(7) The plaintiff relet a portion of the premises to Highland Park Industries and Sol Terkeltaub on a month to month basis beginning December 1, 1989 at the rate of $200.00 per month for rent and $50.00 per month for utilities, totally $250.00 per month. This was approximately one-fourth of the premises.
(8) The plaintiff also relet a portion of the premises (the warehouse portion) of approximately 250 square feet to Churchill Development, Inc., and Robert Reynolds, Jr., commencing November 1, 1989, through April 30, 1990, for a base rent of 250.00 per month.
(9) The plaintiff executed an exclusive right to lease agreement with the Beazley Company on May 10, 1989, for 60 Connolly Parkway.
(10) There is one sump pump in building 15.
(11) Though the claims are contested, the parties agree that the plaintiff mailed a letter dated January 17, 1989, with an attachment, providing the calculations for a full oil bill from 1987 through 1988, in the amount of $2,629.05. They also agree another billing through February of 1989 was issued requiring payment in the amount of $2,890.85.
At trial, Claudia Anderson, property manager of the plaintiff since May of 1990, testified to the efforts the plaintiff made to relet the premises once the defendant vacated in April of 1989. She testified that the plaintiff ran ads, renewed those ads every ten days, and listed the property with the Beazley Company Co-realtors. She testified to the two leases executed for portions of the premises, noted in items (7) and (8) above. She stated that the Beazley Co. did bring in a couple of people to Building 15. She testified that the landlord and the tenant were responsible for heating the building. She testified that the defendant owes an outstanding oil bill in the amount of $2,890.00 for 1987, 1988 and 1989 (2 months) (Plaintiff Exh. D E). She testified that the landlord was responsible for providing utilities Monday through Friday from 8:00 AM to 6:00 PM and that the tenant was responsible for his portion of the rest of the time. She testified that she did not prepare the document regarding the fuel bills owing or "have any knowledge of it." She also testified to the numbers of tenants the landlord had and that there were less tenants in 1990 than at the current time. CT Page 8146
Mr. James Sansone, President of Type House, testified that he gave written notice in November, 1988; January, 1989; and March 1989 of his interest to vacate. He testified he wanted to vacate to move to obtain more space that he couldn't obtain from the plaintiff. In one letter, he acknowledged his continuing obligations under the lease. He testified that the owner, Mr. Nicholson, told him he (the owner) had a tenant. He (the defendant) said he, too, thought he had a tenant who wanted his premises but it turned out not to be so. Before the defendant moved out, Mr. Nicholson told him around April 1, 1989, that the tenant, he thought he had, was now not going to take the space. The defendant testified that they were running three shifts each day. He testified that the landlord was responsible for heat from 8:00 AM to 6:00 PM. He testified that any heat on the weekend was not his. He said he used minimal heat from 6:00 PM to 8:00 AM. The defendant testified there were no rental signs out in front of the premises before he left. Around June or July, 1989, he saw someone, who did electrical work, and an attorney using the premises.
With respect to Mr. Sansone's counterclaim, he testified that there was a problem with the sump pump. It stopped working. It was connected to a sink. The previous owner put in the sump pump. He testified that there were heavy rains and he had to put in claims for insurance. We had people in water and he informed the plaintiff's maintenance department. He had two claims for insurance in 1988-1989. He testified that both claims were paid and that he is out-of-pocket $1000.00, $500.00 for each deductible. The defendant did not offer into evidence of his claims, payments, or policies and deductibles. He did not mention the sump pump claims in any of his letters notifying of his intent to vacate. He testified he could not locate this information or his insurance claims. The plaintiff offered the testimony of Louis Florentino, the plaintiff's maintenance man since 1985. He testified there was a two foot cubic square sump pump in a 6-7 foot by 10 foot area in the premises used by the Type House. He testified that the sump pump was installed by a former landlord and was never running and since there was no drain he went on two or three occasions to dry-vac the area. He testified he was not aware of any insurance claims by the defendant. He said there was a camera and camera film in that room.
Based on the evidence presented and the credibility of the witnesses, the court finds that the plaintiff has met his burden of CT Page 8147 proof on the unpaid rent claim and the damages claim for breach of the rental conditions of the contract.
In a commercial tenancy, the landlord must mitigate if he either terminates the lease or accepts the surrender of the premises by the tenant. In this case, the court finds the plaintiff did accept the surrender when it rented out portions of the premises on November 1, 1989. Therefore, the landlord is entitled to sue for unpaid rent until November 1989 and for damages for breach of contract thereafter and must show mitigation. Rokalor, Inc. v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384,388-89 (1989); Danpar Associates v. Somerville Mills Sales Rooms, Inc., 182 Conn. 444, 445-46 (1980).
The court does not agree with the defendant's interpretation of the lease on this issue. The defendant cites the following provision:
 Provided, however, and it is further agreed that if said rent shall remain unpaid ten (10) days after the same became payable as aforesaid. . . . . then this lease shall thereupon, by virtue of this express stipulation therein expire and terminate, and the landlord may, at any time thereafter re-enter said premises, and the same have and possess as of landlord's former estate, and without such re-entry, may recover possession thereof in the manner prescribed by the statute relating to summary process. . . ."
That provision cited by the defendant refers to the ability of the landlord to seek possession of the premises once there is a nonpayment of rent. That provision must be read together with other provisions of the lease that provide for collection of unpaid rent and reletting expenses, and that provides that on default made in any of the covenants the landlord has the right to terminate the lease. The defendant's liquidated damages argument is also without merit.
The court also finds based on the evidence provided that the plaintiff has proven that he has undertaken reasonable efforts to relet the premises in mitigation of his damages. Thorne v. Broccoli, 39 Conn. Sup. 289 (1984). The court is not persuaded that K K Realty Associates v. Gagon, 8 Conn. 2 Reporter No. 5, 152 (1993) governs this case. The defendant did not prove his special defense that the landlord released him from all his obligations by CT Page 8148 accepting another tenant. Therefore, the court awards the plaintiff $13,195.14 in unpaid rent and damages minus $2,500.00 in rental amounts received in mitigation for a total amount of $10,695.14 in damages.
With respect to the plaintiff's claim for oil charges under the contract, the court finds that the plaintiff has not met his burden of proof on this claim. The burden of proof is on the landlord to establish all elements of the claim. Expressway Associates II v. Friendly Ice Cream Corp. of Connecticut, 218 Conn. 474
(1991). The contract provides that the landlord is responsible "to maintain and keep in good repair. . . . heating devices . . . to provide . . . heat in the premises from 8:00 AM to 6:00 PM, Monday through Friday. . . ." The lease also provides that the "tenant agrees, at the tenant's expense, to provide all of its own electrical,. . . services, and any other services necessary for the operation of the tenant's business in the demised premises." The court did not receive sufficient evidence to support the plaintiff's claim that his calculations of oil used by the defendant are properly and accurately chargeable to the defendant. The court also could not find any evidence in the record that the plaintiff was obligated to pay or did pay for any part of those services provided to the defendant.
Additionally, in the plaintiff's brief he requested attorneys in the amount of 15% of the recovery. Conn. Gen. Stat. 47a-4(a)(7), which limits such fees to 15%, applies to actions for money damages based on residential leases. Since this was a commercial lease, the 15% provision does not apply and the court needs testimony or an affidavit of work performed for attorneys fees. The plaintiff shall file with the court and opposing counsel an affidavit of attorneys fees requested with an itemization of the work performed within 14 days. The defendant, upon receipt of that affidavit, must file with the court and opposing counsel any objections to the requested attorneys fees and the reasons therefore within 5 days. If there are no objections filed within those 5 days, the plaintiffs affidavit of fees will be deemed approved by the court.
With request to count 1 of the defendant's counterclaim, regarding damages caused by the sump pump, the court finds that the defendant did not produce sufficient evidence to meet his burden of proof. Furthermore, count 2 of the defendants counterclaim also fails because count 2 of defendant's counterclaim, alleging a CUTPA violation, is premised on a finding for the defendant in count 1 of CT Page 8149 the counterclaim.
In conclusion, judgment for the plaintiff in the amount of $10,695.14 plus attorneys fees as are provided for above and costs.
SO ORDERED.
Clarine Nardi Riddle, Judge