# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2583-15T4

L.S.T.,

    Plaintiff-Respondent,

v.

C.V.,

    Defendant-Appellant.

_____

        Argued May 17, 2017 — Decided  June 28, 2017

        Before Judges Alvarez and Lisa.

        On appeal from Superior Court of New Jersey,
        Chancery Division, Family Part, Morris County,
        Docket No. FV-14-000552-16.

        Tanya N. Helfand argued the cause for
        appellant (Helfand & Associates, attorneys;
        Ms. Helfand, of counsel and on the briefs).

        Jessica Ragno Sprague argued the cause for
        respondent (Weinberger Law Group, LLC,
        attorneys; Ms. Ragno Sprague, on the brief).

PER CURIAM

    Defendant appeals from the January 20, 2016 final restraining

order entered under the Prevention of Domestic Violence Act of

1991 (Act), N.J.S.A. 2C:25-17 to -35, in favor of plaintiff. The predicate offense was harassment (N.J.S.A. 2C:33-4). See N.J.S.A. 2C:25-19a(13). Defendant argues that the entry of the order was error because the judge's credibility determinations and factual findings were not supported by the record, a purpose to harass was not proven, the court failed to state why a restraining order was necessary for plaintiff's protection, and the judge's findings of fact and conclusions of law were not based on a sufficient analysis of the testimony and evidence. We reject these arguments and affirm.

The parties are both nationals of India. They were married in India in 2007 in an arranged marriage. Defendant had already been living in the United States. After the marriage, plaintiff moved to the United States to live with her husband. Both parties hold masters degrees and at all times relevant to this case they were employed full-time in professional positions in the information technology field. They had one child, a son, Ken (fictitious name), who was born in 2011. The predicate offense occurred on January 10, 2016. Ken was then four-and-one-half years old.

The original domestic violence complaint listed assault as the predicate offense and alleged that defendant struck plaintiff in the face and pushed her on the couch, and that he pushed Ken

to the floor using his leg. The complaint also stated that there was a past history of physical violence. Prior to the hearing, an amended complaint was filed adding harassment as an additional predicate offense. The amended complaint also set forth a detailed statement of prior domestic violence, listing multiple events that occurred on specified dates throughout the years of the parties' marriage.

The hearing on the domestic violence complaint was conducted on January 20, 2016. Both parties were represented by counsel. Both parties testified, as did the police officer who responded to the scene at the time of the precipitating incident and defendant's cousin, who had acted as an informal mediator between plaintiff and defendant in the events leading up to the precipitating event. A summary of the evidence follows.

After Ken's birth, the parties engaged in a routine by which plaintiff's mother would assist in caring for him. She would take him each year to her home in India for an extended stay of several months. She would return to the United States to the parties' home and live with them for up to six months at a time, caring for Ken while both parties worked at their full-time jobs.

Plaintiff testified as to numerous specific events when defendant became verbally and physically abusive toward her, her mother, and Ken. We set forth some examples.

Plaintiff said her husband often drank excessively and, when he came home, he became argumentative. She cited an incident in 2007 when one of these episodes occurred, and "with that argument, he -- he just grabbed my neck and then he hit me onto the wall." In 2009, another similar episode occurred. After drinking, defendant came home, an argument ensued, and he banged plaintiff's head into the wall and threw things at her. Plaintiff described that defendant starts with verbal abuse, and when the argument heats up, "he usually hits me, like he -- he slaps me or he bangs my head onto the wall or throws things that he has in his hand at me. Like he throws phone or plate, whatever he has in his hand towards me." When asked whether this happened more than once, plaintiff answered in the affirmative.

After the 2009 incident, plaintiff said she "couldn't take it anymore, so [she] went back to India." Defendant traveled to India and convinced her and her family that he would "change his behavior." Plaintiff agreed to return with defendant to the United States.

Plaintiff testified that in 2010, when her brother was here with them, defendant slapped her. Her brother warned him "saying like, if you ever do that again, he said he'll call the cops."

Plaintiff described an incident in 2015, when her mother was staying with the parties. When plaintiff returned from work, her

4 <span>A-2583-15T4</span>

mother told her that defendant had been very abusive toward her. Plaintiff told defendant, "if you have any issues, then you have to deal with me, my mom is just visiting." And "that's when he hit me again." Plaintiff did not call the police, but her mother called plaintiff's brother in California, and "he called cops from there because he was very worried for me and my mom." When the police arrived, plaintiff testified that defendant directed her not to "mention about any physical abuse or anything otherwise I'm going to give you a hard time." She complied and told the police these were only verbal arguments, and no complaints were filed.

Plaintiff moved out of the marital home on January 4, 2016. She had already rented an apartment and was planning to move out of the marital home. On January 3, 2016, she was eating her lunch in the marital home, when defendant became very aggressive. He "came charging" at her and pushed her bowl of food off the table and onto the floor. She produced a photograph of the bowl and food on the floor.

Throughout the years, different family members served as informal mediators, attempting to assist the parties with their marital difficulties. During the time leading up to the precipitating event, defendant's cousin fulfilled this role. With his assistance, the parties agreed that when plaintiff would move out of the home, Ken would stay in the marital home with defendant.

Plaintiff would pick Ken up at daycare each day and spend time with him, after which she would return her son to the marital home to sleep. On weekends, if plaintiff wanted to spend time with Ken, she would give defendant advance notice and would be able to do so.

During the first week that plaintiff was out of the home, the parties abided by these arrangements. As the weekend approached, plaintiff called defendant on Friday and said she wanted to see Ken over the weekend. Defendant refused. She called defendant again on Saturday, and he again refused demanding that she provide at least three days' notice.

On Sunday, plaintiff went to the marital home. Defendant and Ken were there. Plaintiff said she wanted to take Ken with her to stay with her. She said the present arrangement was not acceptable. The parties argued and they called defendant's cousin. Plaintiff testified that defendant's cousin "said he will convince him for me to take my son with me to my new place and I can take care of complete custody of my child." The understanding was that this informal arrangement would continue until the parties eventually went to court, as it was contemplated, seeking a divorce or other relief arising out of the marital relationship. At that future time, a legal order would be issued determining custody and parenting rights.

The parties ended the conversation, which they had conducted on a speaker phone, with defendant's cousin. Plaintiff then described what happened next:

> After hanging up the phone again he came charging at me saying like, no, no, you cannot take [Ken] with you, I'm not even going to listen to my cousin this time, you cannot take him. And it -- he -- he slapped me and then he pushed me on to the couch. I fell on couch. He went sit on the (indiscernible) and off on the couch -- my son went to him saying like no, I want to go with mom and then he hit my son with his leg on my son's neck and head, he fell on the floor. That's when he was crying. I console him and I -- I was frightened because he was very aggressive, so I call cops then. I called the cops.

Plaintiff described that she felt "[v]ery frightened." When asked how Ken reacted, she said: "He was frightened too. He said he never want to go back to his dad again."

A police officer arrived in response to plaintiff's 911 call. The parties provided written statements to the police. Plaintiff's statement was consistent with the testimony she gave at the hearing. She did not complain of any injuries, and declined any medical treatment for herself and Ken. The initial complaint was filed and a temporary restraining order was issued.

In his testimony, defendant denied ever striking plaintiff. He also denied excessive alcohol consumption or being verbally or physically abusive to plaintiff, Ken, or plaintiff's mother. With

respect to the precipitating event, defendant took the position that the parties had struck an agreement, albeit informal and not legally binding, and plaintiff should have been required to adhere to it. He denied striking her or Ken during that episode. He testified that he feared that plaintiff might take Ken and go to India.

Defendant's cousin confirmed that at the time of the precipitating event, he spoke to the parties on the phone and urged that the informal arrangement be changed in accordance with plaintiff's wishes. He testified:

> So then we -- I kind of told her, if you want, take him totally, I will make him agree to your terms until you decide on the court who can keep the kid based on the legal terms because I don't -- I'm not a legal person, I cannot decide.
>
> So even on that day then, this is what I said, then you can take -- take him and I also make him say, if you want take the kid, I'm not going to -- I don't have any problem, but we'll decide in the court.

Because the critical facts in this case were disputed by the conflicting testimony of plaintiff and defendant, the judge's assessment of their credibility was critical to deciding the case. In no uncertain terms, the judge found plaintiff's testimony extremely credible, describing it as "very compelling." Conversely, he found defendant to be very incredible, based upon

his demeanor and inconsistencies in his testimony. The judge commented that various aspects of defendant's testimony did not make sense.

He believed plaintiff's version of the events, including the history of prior acts of domestic violence and her description of what happened on January 10, 2016. The judge also found that, during her testimony, plaintiff's

> demeanor clearly showed to me that she was frightened. Her demeanor of the past events clearly showed to me that she was frightened of this man and lived in a very controlled environment for -- for many years during the course of their marriage.

With respect to the precipitating event, the judge said:

> I believe he pushed her and slapped her and pushed her to the couch, told her she wasn't taking the child, told her that he did not agree with his cousin, didn't care what his cousin said and she had no other choice but to call the police. And that's what she did.

The judge went on to find that because there was no evidence of injuries to plaintiff or Ken, the elements of simple assault were not met. See N.J.S.A. 2C:12-1a(1). However, he was satisfied that the elements of harassment had been proven by a preponderance of the evidence. The judge set forth the definition of harassment under N.J.S.A. 2C:33-4b, namely, that a person commits the offense if, with purpose to harass another, he subjects another to striking, kicking, shoving or other offensive touching. Based

upon his credibility determination, the judge made the factual finding that the offensive touching did occur, and he found that "defendant's purpose to harass may be inferred from the evidence presented from common sense and experience." He made this determination based upon his consideration of "the totality of the circumstances."

Based upon these findings, the judge issued a final restraining order. The order included a provision awarding plaintiff temporary custody of Ken.

Our standard of review of the factual findings of a trial court sitting without a jury is very limited. Such findings are binding on appeal when supported by adequate, substantial, credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974). Further, the findings and conclusions of a trial judge are entitled to enhanced deference in family court matters, given the special jurisdiction and expertise of family court judges in such matters. Cesare v. Cesare, 154 N.J. 394, 413 (1998). We have reviewed the complete record of these proceedings. Applying the principles stated above, we are satisfied that the judge's factual findings are amply supported by the record, and we have no occasion to interfere with them.

Likewise, we recognize that the trial court enjoys the benefit, which we do not, of observing the parties' conduct and

demeanor in the courtroom and in testifying.  Through this process, trial judges develop a feel of the case and are in the best position to make credibility assessments.  We will defer to those assessments unless they are manifestly unsupported by the record.  Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357 (App. Div. 1961).  The judge's credibility assessments are supported by the record, and we defer to them.

Accordingly, we reject defendant's argument that the trial court's credibility determinations and factual findings are not supported by the record.  On a related subject, we also reject defendant's argument that the judge's findings of fact and conclusions of law were not based on a sufficient analysis of the testimony and evidence.  In an effort to persuade us on this point, defendant's brief calls to our attention selected portions of testimony that were favorable to him or that demonstrate apparent conflicts with other evidence that was unfavorable to him. Defendant then criticizes the trial judge for not addressing each of those points in his statement of reasons.  A trial judge is not required to address every such piece of evidence in order to render a sound decision.  The judge set forth more than ample reasons, rooted in the evidence, supporting his credibility determinations. From those determinations, his factual findings flowed with sufficient reference to the evidence presented.

Defendant argues that a purpose to harass was not proven. We do not agree. Rarely do individuals announce their purpose for conduct in which they engage. The judge correctly predicated his determination of defendant's purpose on all of the attendant circumstances, including things that were said and done by the parties. Plaintiff's version of the events, which the judge believed, clearly provided the basis for the judge's inference that, by engaging in the conduct he did, it was defendant's purpose to harass plaintiff.

Finally, we address defendant's contention that because the court failed to expressly state that a restraining order was necessary for plaintiff's protection, with reference to the factors set forth in N.J.S.A. 2C:25-29a, the final restraining order must be set aside. Defendant relies primarily on our decision in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006). He insists that Silver requires an express statement, with factual references from the record, as to which factors listed in N.J.S.A. 2C:25-29a(1) to (6) make the issuance of a restraining order necessary.

Indeed, it is well settled that a restraining order will not issue solely because of the commission of a predicate offense listed in the Act. Bittner v. Harleysville Ins. Co., 338 N.J. Super. 447, 454 (App. Div. 2001). There is a second prong, which

requires consideration of additional factors, including the previous history of domestic violence between the parties, including threats, harassment and physical abuse, the existence of immediate danger to the victim, and the best interests of the victim and any child. N.J.S.A. 2C:25-29a(1), (2) and (4). See also Bittner, supra, 338 N.J. Super. at 454 (quoting N.B. v. T. B., 297 N.J. Super. 35, 40 (App. Div. 1997)); Cesare, supra, 154 N.J. at 401.

In Silver, we restated this well-established principle. Silver, supra, 387 N.J. Super. at 125-27. In that case, the trial court found that a predicate offense had been established. However, the trial court's findings were ambiguous as to whether, and to what extent, he believed either party's testimony regarding some prior episodes. The judge did not issue a restraining order. We remanded for clarified findings regarding the second prong, namely, whether a restraining order was necessary to protect the victim, considering such factors as a history of prior acts of domestic violence. Id. at 126-28.

We found such clarification necessary for this reasons:

> Although it might be inferred from the conclusion of dismissal reached by the trial judge that he did not believe plaintiff was in immediate danger and that a restraining order was not necessary to prevent further abuse, the judge appears to have based his finding that "domestic violence" had not

occurred on his determination that the record
did not support a finding that there had been
"a pattern of abuse and a pattern of
controlling behavior."

[Id. at 128.]

In our discussion about the second prong, we observed:

Although this second determination—whether a
domestic violence restraining order should be
issued—is most often perfunctory and self-
evident, the guiding standard is whether a
restraining order is necessary, upon an
evaluation of the factors set forth in
N.J.S.A. 2C:25-29a(1) to -29a(6), to protect
the victim from an immediate danger or to
prevent further abuse.

[Id. at 127.]

We also noted that "it is clear that a pattern of abusive and

controlling behavior is a classic characteristic of domestic

violence." Id. at 128, citing Cesare, supra, 154 N.J. at 397-98.

The case before us falls into the broad category in which

there is a clear and extensive pattern of abusive and controlling

behavior. The judge found: "I believe her testimony that this

wasn't the first time she was hit. I believe her testimony that

in the past, she was and I believe that he was very controlling

of her throughout the relationship." As we have previously stated,

the judge was convinced, referencing plaintiff's demeanor as she

testified, that she was frightened, that the past events happened

and frightened her, and that she had lived in a very controlling environment throughout the course of the marriage.

Although the judge did not expressly refer to the factors in N.J.S.A. 2C:25-29a, he found that there was a previous history of domestic violence, including threats, harassment and physical abuse, that plaintiff was justifiably in fear for her safety, and that defendant's conduct constituted a pattern of abusive and controlling behavior that persisted for many years. In light of those findings and the fact that the judge issued a restraining order, we infer that the judge implicitly made the requisite finding under the second prong that a restraining order was necessary for plaintiff's protection. It would have been preferable had the judge expressly made the finding, but any error in this regard is harmless because this is one of those cases we described in Silver in which an express finding would have been "perfunctory and self-evident." Silver, supra, 387 N.J. Super. at 127.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2583-15T4