**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5289-16T4

CHARMING WAY HOMEOWNERS
ASSOCIATION,

      Plaintiff-Appellant,

v.

MIRACLE INVESTMENT GROUP
LAKEWOOD, LLC,

      Defendant-Respondent,

and

WESTMOUNT
AUTO LEASE, LLC,

      Defendant.

_____

      Argued November 5, 2018 – Decided  November 15, 2018

      Before Judges Sabatino, Haas and Mitterhoff.

      On appeal from Superior Court of New Jersey, Chancery Division, Ocean County, Docket No. C-000219-14.

Mark A. Roney argued the cause for appellant (Hill Wallack, LLP, attorneys; L. Stephen Pastor, of counsel and on the briefs; Mark A. Roney, on the briefs).

Michael R. O'Donnell argued the cause for respondent (Riker Danzig Scherer Hyland & Perretti, LLP, attorneys; Michael R. O'Donnell, of counsel and on the brief; Jorge A. Sanchez, on the brief).

PER CURIAM

Plaintiff Charming Way Homeowners Association appeals from the Chancery Division's June 28, 2017 order, finding that defendant Miracle Investment Group Lakewood, LLC's title in certain property located in Lakewood Township was "free of any conditions or interests of" plaintiff, and dismissing plaintiff's complaint that sought to quiet title to the property. On appeal, plaintiff alleges, as it did before the trial court, that a Lakewood Planning Board (Board) Resolution approving a subdivision had the effect of dedicating the property to it for use as a community center, and this alleged dedication took precedence over a previously-recorded mortgage providing the lender with ownership of the parcel in the event of a default on the mortgage loan.

Plaintiff also contends that defendant had actual knowledge of the conditions set forth in the Board Resolution when it purchased the property at a sheriff's sale and, therefore, defendant should be bound by those conditions. After reviewing the record in light of the contentions advanced on appeal, we

2

conclude that plaintiff's arguments are without merit, and we affirm substantially for the reasons set forth in Judge Francis Hodgson, Jr.'s comprehensive written decision rendered on June 28, 2017, following a five-day trial.

The underlying procedural history and facts of this case, as developed at the trial, are extensively detailed in Judge Hodgson's decision. Therefore, only a brief summary is necessary here.

Plaintiff is a non-profit corporation whose members own townhouses in a development known as Charming Way in Lakewood. Defendant is a business entity operating in Lakewood.

In May 2006, a company named Sea Real Estate CCHF 101, LLC (SRC) purchased a property known as Block 534, Lot 18 in Lakewood. The property was vacant except for an office building located on Lot 18.01. SRC wanted to develop the property and it obtained a $1 million loan from EAMA Capital, LLC, and two individuals (collectively EAMA) to do so. SRC gave a mortgage to EAMA on August 7, 2006, and it was properly recorded on August 10.

While it was seeking the financing, SRC partnered with UMAN Holdings, LLC (UMAN) and sought subdivision approval, site plan approval, and variances to develop Lot 18. On August 15, 2006, five days after the mortgage

on the property was recorded, the Board issued a Resolution setting forth the Board's findings that approved the subdivision with various conditions.[1] The Resolution referenced testimony from SRC's project engineer that "the only variances required are for the office building [and] . . . the homeowner's association will own the office building and lease it out." Significantly, there was no homeowners association in existence at that time and, indeed, plaintiff would not be formed until September 2010.

In August 2007, SRC transferred the twenty-seven townhouse lots to CCHF 101, LLC (CCHF) for $1, and retained ownership of the office building on Lot 18.01. On September 6, 2007, EAMA agreed to modify its mortgage by, among other things, releasing the mortgage lien as to the townhouse and playground lots, and consenting to the transfer of these lots to CCHF. However, SRC maintained ownership of Lot 18.01, and the mortgage on the property remained in favor of EAMA.[2]

---

[1] The subdivision resulted in the creation of twenty-nine lots. All but two of the lots were to be used for single family townhouses; one would be used for a playground; and the remaining lot, Lot 18.01, is where the office building that is the subject of this litigation is located.

[2] On August 31, 2007, CCHF entered into a separate construction loan agreement with Community Preservation Corporation (CPC) to build the townhouses. This financing is not directly involved in this appeal. In April 2012, CPC assigned its interest to a company called PrivCap.

On February 5, 2008, SRC defaulted on its mortgage to EAMA and, three months later, EAMA brought a foreclosure action against it. In July 2008, EAMA filed a lis pendens on Lot 18.01. On August 5, 2010, EAMA obtained a final judgment in the foreclosure action for approximately $1.2 million. The foreclosure court ordered the property to be sold at a sheriff's sale to satisfy the debt.

In the meantime, the Board approved a Final Plat on May 22, 2008. The Final Plat indicated that Lot 18.01 "is to be dedicated to the Homeowner[]s Association and are [sic] subject to all easements thereon." During the course of the litigation, the Board stipulated that the Final Plat "only dedicated easements over [Lot 18.01] and other common property to . . . [p]laintiff, <u>not the property itself</u>." (emphasis added). The Board also stipulated that it "was not a party to and/or is not bound by any contract alleged by" plaintiff and that "said contract does not exist or is void ab initio[.]"

On October 18, 2010, two months after EAMA obtained its final judgment of foreclosure, SRC and CCHF executed and recorded a Declaration of Restrictive and Protective Covenants (Declaration). The Declaration specified

that there would be perpetual easements over Lot 18.01 for the benefit of the newly created homeowners association, the plaintiff in this case.[3]

On January 4, 2011, an individual purchased Lot 18.01 at a sheriff's sale. However, this purchaser obtained an order vacating the sale on February 4, 2011.[4]

On August 13, 2013, defendant bought Lot 18.01 at a sheriff's sale for $425,000. Defendant had a title search conducted which revealed no issues with the property. Defendant alleged that it had no knowledge of the statement in the Board's Resolution that "the only variances required are for the office building [and] the homeowner's association will own the office building and lease it out."

---

[3] In 2013, there was a dispute between EAMA and PrivCap as to whether the easements set forth in the Declaration were extinguished by EAMA's foreclosure action. EAMA and PrivCap resolved the issue by, on May 30, 2013, recording a subordination agreement which provided that the easements would continue in favor of plaintiff.

[4] During the course of the trial, plaintiff sought to submit a certification from this purchaser and one from another individual to attempt to support its claim that a public records search would have disclosed information to a prospective purchaser that plaintiff had ownership rights in the property. Judge Hodgson excluded these certifications because they were inadmissible hearsay. Giving deference to the judge's evidentiary ruling, Griffin v. City of E. Orange, 225 N.J. 400, 413 (2016), we conclude that plaintiff's argument on appeal that the judge erred by barring these certifications is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-5289-16T4

Defendant also contended that it was not aware of the unsuccessful first sheriff sale.

After acquiring Lot 18.01, defendant paid almost $30,000 to satisfy an outstanding tax sale certificate on the property, and approximately $107,000 more for unpaid property taxes. Defendant found that the office building was in disrepair from non-use. It refurbished the interior of the building, replaced shingles and siding, installed new landscaping, and installed a new heating and air conditioning system. All told, defendant spent approximately $230,000 for these improvements.

After the foreclosure, the first six townhouses were sold between 2010 and 2011. Each of the sales contracts for these units included a clause that stated, "Buyer acknowledges that Seller will not build, construct nor provide a fitness center, park, pool or community center in connection with this development." These contracts also stated that a homeowners association "will be formed for the purpose of maintaining the common areas, including without limitation, roads, drainage facilities, parking, irrigation system, landscaping and playground." Thus, these contracts say nothing about plaintiff owning the office building or using it as a community center.

A-5289-16T4

In May 2013, CCHF transferred the remaining twenty-one townhouse lots to PCF Lakewood Holding LLC (PCF) for $1 in lieu of foreclosure on a construction loan. Between August 2013 and February 2014, PCF sold the remaining townhouses. The contracts for these sales also make no representation that plaintiff would own the office building or that the Charming Way development would have a community center. Each of these purchasers received a copy of the Declaration. However, that document does not contain any provision suggesting that plaintiff would own or operate the office building. Instead, as noted above, the Declaration merely references the easements over the commercial property.

Nevertheless, plaintiff asserted that it was the actual owner of the office building. In November 2014, it filed a complaint which, among other things, sought to quiet title in Lot 18.01, and eject defendant from the premises.[5] At trial, plaintiff claimed that the Resolution and Final Plat created "binding and enforceable contract[s]" or "agreements" with the Board to which plaintiff was a third-party beneficiary. Plaintiff alleged that defendant breached these "agreements" by failing to transfer title to the office building to it. Plaintiff also

_____

[5] Defendant filed a third-party complaint against the Board, but the parties resolved that matter by way of stipulation.

contended that the approvals granted in the Resolution required dedications, which should run with the land.

In his thoughtful written opinion, Judge Hodgson methodically and thoroughly addressed each of plaintiff's contentions and determined they lacked merit. The judge first found that, contrary to plaintiff's assertion, the representations made by SRC that were set forth in the Resolution were not "capable of defeating title in the earlier recorded mortgage[]" held by EAMA. In this regard, the judge noted that it was well established that a mortgagor, in this case SRC, "remains in possession until default, but upon default, the mortgagee [here, EAMA] is entitled to possession of the mortgaged premises."

Citing a number of supporting cases, Judge Hodgson also observed that

> the mortgagee's title is established at the time of the execution of the mortgage. That is, foreclosure places the mortgagee in the shoes of the original lender at the time the mortgage was executed. . . . The duty owed by the mortgagor to [the] mortgagee includes a duty not to impair the security of the mortgage.

Applying these precedents, Judge Hodgson concluded:

> It is therefore, clear that on August 7, 2006, when SRC executed the mortgage in favor of EAMA, it conveyed to EAMA the right to title in the [o]ffice [b]uilding upon default of the mortgage. It is also clear that EAMA's rights insured [it] title free of any encumbrances not in place at the time of execution. Reduced to its simplest form, SRC provided the [o]ffice

9

building as collateral for EAMA's loan, and in return, EAMA required that SRC not diminish the value of its collateral during the life of the loan without EAMA's consent.

The judge next considered "whether the purported conditions [p]laintiff seeks to enforce are encumbrances subject to the mortgage." In answering this question in the negative, Judge Hodgson found that unlike the recorded mortgage EAMA held, the later subdivision Resolution, and the conditions contained within it, have no effect on title. Properly citing Aldrich v. Hawrylo, 281 N.J. Super. 201, 211 (App. Div. 1995), and other relevant precedents, the judge ruled

> that "[b]ecause zoning ordinances and planning board and board of adjustment resolutions are not title matters, are not part of the public land records and do not impart constructive notice to purchasers, they are not searched."[] Therefore, land use decisions cannot ordinarily[] impart constructive notice to subsequent purchasers. Moreover, in this case, any notice to [the] mortgagee would not have been effective until after the Resolution.

Here, the mortgage was recorded prior to both the memorialization of the Resolution and the filing of the Final Plat. Thus, Judge Hodgson concluded that "any interest arising from the later . . . Board Resolution or the filing of the Final Plat would have been subsequent to and subordinate to the EAMA mortgage absent actual knowledge of the encumbrance."

10

After reviewing all of the evidence presented at the multi-day trial, the judge rejected plaintiff's contention that EAMA "had actual knowledge of the dedication required by the Resolution, which would therefore affect the priority of claims." For the reasons stated by Judge Hodgson, because the conditions were adopted after EAMA's mortgage was recorded, any knowledge it may have had about this later action would certainly not diminish its pre-existing rights in the property.

Plaintiff next argued that the conditions set forth in the Resolution were "enforceable notwithstanding the foreclosure [because] the conditions must run with the land." Judge Hodson disagreed. He found that the Board never interpreted the Resolution or the Plat as requiring a change of ownership of Lot 18.01 or the office building from EAMA to plaintiff. Indeed, plaintiff did not even exist until September 2010. Instead, the Board stipulated that the purpose of the Resolution and the Final Plat was to memorialize the easements plaintiff would have over the property after it was formed. Accordingly, the judge found "that, taken as a whole, the evidence show[ed] that the Resolution only required reciprocal easements and not a transfer of ownership as argued by [p]laintiff."

The judge also found "no authority under the Municipal Land Use Law [N.J.S.A. 40:55D-1 to -163,] which would permit [the Board] to dictate

11

ownership of subdivided parcels, nor would it have any interest in doing so." Again citing Aldrich, and numerous other precedents, Judge Hodgson found that such an "ownership condition" would "serve[] no valid zoning purpose" because it "would not change the use of the [p]roperty, nor impact the density or use of either parcel[;] it would affect only who owns and collects the rents."

Judge Hodson next found that EAMA and defendant did not have any knowledge of any of these conditions when it purchased the property at the sheriff's sale. As noted above, EAMA recorded its mortgage before the Resolution or Final Plat were completed. Similarly, the evidence demonstrated that defendant commissioned a title search which revealed no evidence of any restrictions affecting its ownership of the property.

Finally, the judge rejected plaintiff's contention that it was a third-party beneficiary to a "contract" between the Board and SRC as expressed in the Resolution. Again, the judge noted that the Board stipulated that it had no such contract with SRC and never intended to convey any ownership rights in Lot 18.01 or the office building to plaintiff.

In sum, Judge Hodson found that plaintiff had no claim to ownership of the property because "EAMA is considered by this [c]ourt to be a good faith, innocent lender, without notice. This [c]ourt further finds that, at the sheriff's

12

sale, [defendant] was a good faith bona fide purchaser for value without notice." In addition, it would simply be inequitable to require a transfer of ownership to plaintiff under the circumstances of this case. Here, EAMA provided the $1 million loan that enabled the development to occur. Without that financial assistance, it is likely that Charming Way would never have been constructed and that plaintiff would never have been formed. In addition, defendant spent almost $300,000 refurbishing the office building, and curing the tax problems that existed. On the other hand, none of the individuals who purchased homes in Charming Way were promised there would be an office building devoted to their use as a community center. As Judge Hodgson cogently observed, "[t]he effect of enforcing the conditions [in the Resolution] without any expectations [on the part of the home purchasers], would be to unjustly enrich [p]laintiff at great expense to" defendant.

On appeal, plaintiff raises the same contentions that Judge Hodgson painstakingly considered and resolved in his lengthy written decision. Plaintiff again asserts that: (1) the Board had the authority to require that ownership of the office building be transferred to it; (2) the conditions in the Resolution and statements in the Final Plat "ran with the land" and automatically bound any purchaser of the property, including defendant; (3) the Resolution took priority

13

over EAMA's previously recorded mortgage; and (4) the evidence presented at trial demonstrated that defendant had actual knowledge of the Resolution when it took title to the property.[6] We discern no basis for disturbing Judge Hodgson's rejection of these claims.

Our review of a trial court's fact-finding in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence. Deference is especially appropriate when the evidence is largely testimonial and involves questions of credibility." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). The trial court enjoys the benefit, which we do not, of observing the parties' conduct and demeanor in the courtroom and in testifying. Ibid. Through this process, trial judges develop a feel of the case and are in the best position to make credibility assessments. Ibid. We will defer to those credibility assessments unless they are manifestly unsupported by the record. Weiss v. I. Zapinsky, Inc., 65 N.J. Super. 351, 357 (App. Div. 1961). However, we owe no deference to a trial

---

[6] Plaintiff also argues for the first time on appeal that the foreclosure action was ineffective because EAMA did not join the Board as a party, or list the Resolution conditions as matters that needed to be foreclosed. This argument lacks sufficient merit to warrant further discussion in this opinion. R. 2:11-3(e)(1)(E).

court's interpretation of the law, and review issues of law de novo. <u>Mountain Hill, L.L.C. v. Twp. Comm. of Middletown</u>, 403 N.J. Super. 146, 193 (App. Div. 2008).

Applying these standards, we conclude that Judge Hodgson's factual findings are fully supported by the record and, in light of those facts, his legal conclusions are unassailable. We therefore affirm substantially for the reasons that the judge expressed in his well-reasoned opinion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5289-16T4